Thank you, and good morning, Your Honors. May it please the Court, my name is Bill Bronson. I represent Linda Jackie Larson, who is the personal representative of the estate of Mr. Kenneth Larson. He was the original plaintiff-appellant in this case. Unfortunately, he passed away this summer with no objection by the Commissioner, Mrs. Larson, as the personal representative was substituted in. And, in fact, under the Commissioner's regulations as well as federal statute, she is the appropriate party to continue presenting this claim. As indicated in our briefs, what we are asking the Court to do is find that the windfall elimination provision in the Social Security Act does not apply to Mr. Larson's retirement benefits. We are arguing that he is included with an exception to the WEP that is under Title 42 of the Social Security Act. More specifically, we are asking the Court to apply the reasoning of the Eighth Circuit Court of Appeals in the Peterson v. Astruz case and reject the reasoning of the Eleventh Circuit in the Martin v. Berryhill case that was handed down approximately one year ago and was the decision upon which the District Court, in our case, relied in making its decision. The reason that we argue that Peterson is the more persuasive precedent is simply because we believe the statute is unambiguous. 42 U.S.C. 415.783 simply provides that this WEP exclusion is not going to apply in the instance of those individuals who are receiving a payment based wholly on their service as a member of a uniformed service. That fits or fit Mr. Peterson. It also fits Mr. Larson under the uncontested facts of the case. Mr. Curious, how can you sort of claim that language is unambiguous when you've got two different circuits that come to the 180-degree opposite conclusion about that? Doesn't that itself mean it's ambiguous? Not necessarily. Lawyers disagree over all the time, Your Honor, as to whether or not the individual judges are close to infallible, so. Oh, with all due respect, Your Honor, I don't know if I'd ever make that argument. I think they're So where did the Eleventh Circuit go wrong in concluding that it was not? Well, the primary reason we think, Your Honor, is Or disagreeing with the Sixth Circuit. The primary reason, Your Honor, is we think they're reading something into that provision of the statute that's not there. They're looking at that word service before as a member of the uniformed services. And what they're essentially saying in agreement with the Commissioner is that we can separate this out and look at a dual-status technician like Mr. Larson and say part of the week he's performing what they believe to be civilian duties and then another part of the week he's performing military duties. In other words, military isn't in there. Well, that's correct. And that's our understanding. When we look at the statute, we read it as it is and say it's unambiguous. What does a wholly mean? I'm sorry, what, Your Honor? It says a payment based wholly, W-H-O-L-L-Y, on service. As we understand the statute, Your Honor, and as determined by the Eighth Circuit, in this instance, Mr. Larson is receiving a civil service pension payment that's based wholly on his service as a member of the uniformed service. Well, tell me this. Does your client, the decedent, did he receive two different pensions based on his two different sources of pay? Did he receive one pension for his civil service and one for his military? What happened, Your Honor, is that when he retired from the civil service before he reached his normal retirement age, he then began receiving his civil service pension under the old version of the civil service retirement laws. When he reached his retirement age for purposes of Social Security, he went in to apply for his Social Security retirement. Those benefits had been based by the monies that were put in when he was performing military service as part of his guard duties. So he was receiving two different pensions, Your Honor? That's correct. All right. And then, I mean, why then would, I mean, the whole idea of this windfall elimination provision was to prevent sort of double counting, I gather. And you're claiming what, there's no double counting here? Well, it's not so much the issue of whether there's double counting or not. It's the question of back in 1994-95, when Congress amended the Social Security Act, they specifically provided for this exemption that we're relying on. The military service exemption? Right. The one that the Eighth Circus relied on in its decision. That's correct. Yeah. In any event, going back to... Let me just, I was just curious, trying to understand. So when he did apply for Social Security, the windfall elimination provision to him, how did that reduce his benefits? What did he go from? What would he be getting? What would he have gotten if the commissioner hadn't applied it? Okay. And I don't... He's getting over 500 is what he... Right. This is going to be an approximation, Your Honor, based on the facts that are in the record. But if there was no exemption, or if the exemption had applied and he received his full benefit, his Social Security retirement would have been about $900 a month. When they applied the WEP, it reduced it to about $400 a month through a very complex formula. Right. I looked at the formula. I couldn't make heads or tails out of it. Many people have said that, and that's, you know, no attack on the commissioner. Yes, I understand. They're just trying to come up... Based on the language actually in the Social Security Act, there's this complex formula when they're determining any of our Social Security retirement benefits, where they take your earnings and they break it basically down into threes. Is there anything in the legislative history that suggests that this exemption was only to be available to individuals who had only performed military service? Your Honor, based on my reading of the legislative history, and I realize the 11th Circuit disagrees with this, but as I read the legislative history, when this proposal originally started out in the House of Representatives, it appeared that they were talking about anybody who was a military reservist, regardless. Senate passes a different version of the bill. It goes to conference committee. The conference committee then looks at it and essentially, as I understand the record, adopts the House version, which, based on my understanding of the history then at that point, is saying that anyone, including people like Mr. Larson and their position, would be entitled to this exemption. I guess the idea is that the service needs both civilian and military. I mean... Oh, definitely. Civilians perform a key function in the military. That is correct. That's the whole purpose behind the dual status technician. Although, in this particular instance, whether or not it makes a huge difference in the court's decision, the record indicates that when Mr. Larson was performing his quote-unquote civilian service, he's working on aircraft maintenance of jets that are stationed at our air guard facility. He's doing ammunition and munitions work. And eventually, toward the end of his career, he rises to the rank of a chief master sergeant and he's supervising other people. So I think somewhat coextensive with a lot of other circuit court opinions that have looked at what a dual status technician is, and I recognize those decisions apply mainly in the context of the employment law disputes that have arisen. We're still saying, essentially, it's an irreducibly military-type task, even if they are performing civilian functions. Okay. But, I mean, in the legislative history, I don't recall anything where there was any dealing specifically with a dual service technician. That would be my understanding, too, Your Honor. I don't see those words used in there, but I see that broad term about military reservists, which when I go back through, and Congress would be presuming, would be relying on their previous definitions that they've used, that would include somebody like Mr. Larson. It would include everybody in the Air National Guard, Army National Guard, and so forth. Well, but most reservists in the National Guard are not dual service technicians. They're not also earning employment in a civilian capacity, I mean, a separate pay for civilian work. They just have a normal job, and then they do their two weeks a year and their weekend stuff, and that's just totally separate. Here, it's a little muddled, right, because you've got someone who's doing it. Oh, I would agree with that. I would agree with that assessment, Your Honor. It's just that because it was so broad, because they weren't excluding them, the fact that somebody says they weren't included, it's like, well, by the general definition, it appears like they're including everybody. And why shouldn't we give deference to the government's interpretation, the Social Security Administration's interpretation here, Skidmore deference, if not Chevron deference? Well, this is an interesting situation because, as the Court is aware, when the Peterson decision was handed down, the commissioner made the decision, which is his prerogative, to acquiesce in that ruling in that particular district. And so from that point in time, when this issue has arisen in other circuits, they're going back and relying primarily on their acquiescence ruling, which even the commissioner acknowledges it's not subject to notice and rulemaking and argument and presentation beforehand, much like an administrative rule. And this circuit, as well as many other circuits, have held that acquiescence rulings do not have the force of law. So at that point, if we're going to make the decision, well, is it persuasive, that's when I think we look at Justice Jackson's statements in Skidmore and say, does it really have a lot of persuasive power? And from our perspective, again, the legislative history, with all due respect to the commissioner, we don't think supports his interpretation. But also when we look at the particular history of the statute, when we look at the fact that when Congress passed this exception in 1994-95, it didn't specifically direct the commissioner to interpret or adopt regulations with respect to that particular statute. And that's why in our brief we've attempted to distinguish our case from those situations where Congress has specifically authorized or delegated authority to the commissioner to make sense out of the general policy pronouncements that Congress wants in effect with respect to Social Security. Okay, why don't you save the balance of your time for rebuttal, and let's hear from the commissioner. Thank you, Your Honor. May it please the Court. Judge Gilman, you have it exactly right. Your appearance, please. Oh, I beg your pardon? Your appearance. Sush Misony for the commissioner. Judge Gilman, you have it exactly right. Mr. Larson is receiving two retirement pensions for his work during roughly the same period. The first one is his military retired pay. We don't talk a lot about it in this case, but that was based on his military wages, which he earned from the point that he enlisted in the National Guard in 1971 until he retired in 2006. And under that system, his military retired pay does get the benefit of the exception. He actually is getting the uniformed services exception for the military retired pay, and that's because he fell within this pool of people, this loophole that Congress was trying to help. And that was people who did inactive duty training after 1956 and before 1988. And those people, because they were doing some active duty, which was covered by Social Security, and some inactive duty training, which was not covered by Social Security, they had both covered and non-covered employment, and that would have brought them under the windfall elimination provision and would have triggered a reduction in the Social Security benefits. But because the exception applied, as Congress intended, his military retired pay did not reduce his Social Security. So what we're talking about in this case is his other pension, which he earned for his 9 to 5 job, which was a civil service retirement system pension, a civil service pension. And that pension, he began, it was based on his civil service earnings under a different wage scale. It's not the military wages, it's the civil service GS or wage grade scale. It's paid from a different, the different organization pays it at the different pool of money. And that started when he joined in 1972 as a dual status technician, and he retired from that job in 2004. So again, even the dates of employment don't quite line up. So that did not qualify for the Uniformed Services exception, because it is a civil service pension payment. But the civil service pension wasn't, there was no Social Security contribution to that, was there? Yes, Your Honor, that is exactly why this comes into play. The CSRS, people under the CSRS, the civil service retirement system, did not pay into Social Security. And so what the system did was it gave them a more generous pension. The pension was supposed to take the place of not only the private sector pension, but also the Social Security that they were not going to get. And for most people who were civil servants at the same time as Mr. Larson, who worked 100% of their time in the civil service, that's what they got, their CSRS pension, right, nothing else. But Mr. Larson, like a number of other people in, let's say someone in HUD or DOJ, who was a civil servant at the same time, but also was a National Guard member on the weekends and then for field training in the summer, Mr. Larson is in exactly the same position as that person. The uniform services exception does not apply to their civil service retirement system pension, and it doesn't apply to his. Now, he's saying that he's different, because his civil service job was not at HUD or DOJ, it was at the National Guard Bureau. He had to be a member of the service, didn't he? He did. Isn't that different? No, because what that is, so he had to be a member of the service. He had to be a military guy. He had to be a member of the National Guard. And he had to wear a uniform. And these were conditions of employment. They were requirements in the same way that I have to maintain a bar license. I have to pass the bar, and I have to maintain my bar license to have my job. But my job is not having a bar license. My job is arguing cases and writing briefs. That's well and good, but why don't we make that argument in light of the statute? A payment based wholly on service as a member of a uniformed service. And let's take that apart, each piece. Because each piece is why it all supports the Commissioner's interpretation. Let's start with wholly, because the Martin case in the Eleventh Circuit, the Martin court said wholly is really the critical piece. Wholly means entirely, in its entirety, which means that this payment, which is the pension payment, is based wholly on what? On service. On service, which is not defined. Service as, right? As what? As a member of a uniformed service. Member of a uniformed service. Which is defined in 410M. What's a member of a uniformed service? A person who's appointed, enlisted, inducted into the Army or Air Force or Reserve component. And that's what he was, wasn't it? He enlisted in the National Guard, and in his capacity as an enlisted Guard serviceman, he was either on active duty or inactive duty for training. Right? That's all you get. There's not some other status that applies when he finishes his weekend of inactive duty training, one weekend a month, and he goes home. He's not still on active duty training or inactive duty training. He's not anything. He's at home. And when he goes into work on Monday as a civil service employee, he's still not on inactive duty training or active duty. But he's a member of a uniformed service, right? He is. But that's more like his status. It's not what he does. He gets wages, civil service wages, for doing civil service work. When I read the 11th Circuit's decision and your argument, it just seems like you're adding in the word. I would agree with you completely if the word military was in there. It might be helpful to look at it. If he was wholly on military service as a member of the uniform, then you'd probably. But our point is that to be a member of a uniformed service, and you're saying as, it's in the capacity of a member of the uniformed service. And when you're working as a member of a uniformed service, like I said, you're either on active duty or inactive duty. You cannot be on active or inactive duty while you are in your civil service job working as a dual status technician. In your view, the key word is uniformed service. Well, it's all of those. Each of those words is important. Member of a uniformed service. And he was not a member of a uniformed service for purposes of this exception? For purposes of this exception. Because in the Fifth Circuit case, Walsh, which we list in our brief, there's a helpful discussion on this. They're talking about the Perpich case, Perpich v. Department of Defense. It's a big National Guard case in the Supreme Court. And the Supreme Court had said, when you're in the National Guard, you wear three hats. You have three hats. You have your civilian hat, you have your National Guard state militia hat, and you have your, in that case I think it was Army, active duty hat. But you can't wear more than one hat at a time. You can't be both civilian and National Guard. You can't be both National Guard and Army at the same time. You're doing one thing at a time. So when he would go to work and work at his job where he got his civil service wages, he was a civilian employee of the federal government. When he went on weekends, he was working in the capacity of a member of the uniformed services. And note, he says he, it's true, he retired as a chief master sergeant on the military side. He didn't retire as a chief master sergeant from his dual status technician side. He had a different job title. He didn't have a rank. These were actually different jobs, and Congress intended them to be. Congress created the dual status technician position specifically to do, maybe the most important thing was actually to give these individuals, who previously were state employees, to give them the benefits of the civil service retirement system pension because it was so generous. Up until that point, these state employees, the only retirement and other fringe benefits they got were what varied from state to state. Well, they needed these people to maintain the guard and to keep it strong. They needed them. That's right, and they wanted to attract the best qualified candidates. And the way to do that was to create this position that was dual status, had aspects of both military and civilian, but it's a civilian position in the civilian civil service, the federal civil service, and it's got that great pension. Counsel, do you agree that the statute is ambiguous? Your Honor, if we take all the different pieces apart, to me it says this is who Congress did not intend to cover, dual status technicians. And this Court could actually rule entirely based on the plain language of the statute. So you don't think it's ambiguous? But you all have different views of what the plain language is. Obviously, each of you is explaining. We've had a long discussion about what it means, with examples included, and you still think it's not ambiguous? But, Your Honor, to the extent, of course, that this Court believes that it is ambiguous, the legislative history. But I'm asking you. I'm saying you can rule entirely based on the plain language. I think in one of the many of these cases that I am briefing, the other side has pointed out that the argument that the point about there being no ambiguity in language is the only thing that both sides agree on, except that we believe that it points in different directions. This is a classic example of ambiguity. If different parties argue vigorously of different interpretations, that to me smacks of ambiguity. And obviously, Your Honor, the courts have reached different conclusions. Right. But we believe the Eighth Circuit reached the incorrect conclusion because they did not actually focus on these individual words. They said it's enough that, you know, it's wholly part of the uniformed service simply because he wore a uniform, Mr. Peterson had to be a member of the National Guard. But that's not enough. Well, let me ask you. If it is ambiguous, where does our analysis go? To the legislative history, Your Honor. You take a look at the legislative history, you see what it says. Any deference? Do we give any deference? Deference only supports the Commissioner's position in this argument. But what would we look at? What do we look at for purposes of deference? It means, you know, in Chevron deference, you look at a regulation. Did they properly interpret? Is this a reasonable interpretation of the statute under Chevron? Okay. There's no regulation here. No regulation. And there's this acquiescence ruling. There is an acquiescence ruling. What's that entitled to? We've said virtually nothing. Social Security rulings, this Court and other courts have said they are entitled to respectful, you know, they are entitled to some degree of deference. What about litigation positions? It is not Chevron-type deference, typically. What about litigation positions? Again, Your Honor, these are entitled to, I think, the court looks at them to see to the extent that they are persuasive. But you can also look at the fact that the Secretary's position has been consistent and longstanding and well-reasoned. And it's been put forth since at least the Peterson decision. That's where we had to actually spell it out. Although the commissioner took this position before Peterson. It was just assumed that the exception simply did not apply to dual status technicians. There was no point in putting it in a regulation because there was no reason to believe that they would be treated any differently. Well, what about now that there's been all this litigation? Has there been any thought to maybe having hearings and exercising rulemaking authority on this point? Your Honor, there is the acquiescence ruling. I mean, the commissioner is acquiescing within the Eighth Circuit but pressing his position in every other circuit. Why did this administration not ask for cert in the Peterson case? That was in 2008, and that was the first case. So usually the Supreme Court likes to have these issues percolate through the court's repeal first. I guess you didn't do cert in the 11th because you won in the 11th. Yes, Your Honor. So if we come up with an opposite reason, then you'd have a circuit split and you could ask for cert. Your Honor, there are court repeals arguments coming up in the Third and Tenth Circuits within the next few weeks as well. And briefing is continuing in the Second and in others. So it's a live issue. But if I can get to the legislative history very quickly. Would you turn to it? So if we can't place much weight on the acquiescence ruling, what is your view of what the legislative history tells us? Well, the legislative history plays in very nicely with actually, if you look at the structure of the different statutes. At the time that the exception was adopted, for Social Security purposes, the windfall elimination provision did not apply to any kind of work, employment, pre-1956. Right? Right. So didn't worry about that. The all active duty was considered to be covered employment. So, again, you don't worry about that either because the windfall elimination is about non-covered employment. Right? And what you had left, oh, and inactive duty training starting in 1988, inactive duty training is considered covered employment. So you have a donut hole. You have a little piece in the middle, structurally, which was inactive duty wages for inactive duty training from roughly 1956 to 1987 or 88. And it was the military pension that was based on those military wages for that specific type of work. Just that narrow and discreet class of people, that was what wasn't covered. And those people's military pensions were the ones that were getting hit. So then when you look at the legislative history, that's what those House reports talk about. That's all they talk about. And they may be talking about reservists, but they were talking about a particular group of reservists who were receiving military pensions based on their wages for inactive duty training in that narrow time period. And that's what they wanted to fix because Congress said in those reports this was inequitable. Nobody else receiving a military retirement pension was getting that hit. So we want to make it equitable for that group of people, and they did. And that's why Mr. Larson, that's why his military retirement pay does not reduce his Social Security benefits. This works exactly as Congress intended, but Congress did not intend for it to then apply to Mr. Larson's civil service pension and the civil service pensions of every other civil servant who was working at HUD or DOJ or any other. Well, they're probably not enrolled members of the military. But if they were working at the National Guard. No, no, no. But they have to be based wholly on service as a member. That's right. And Mr. Larson's civil service payment is not based wholly on service as a member of a uniformed service either. It's based on his work, 9 to 5, civil service, leading up to his civil service pension. It's what he did during the week as a GS employee. Okay. All right. Thank you, Your Honor. I think we got it. We got your argument. I'm not sure we got the right answer. We have some time for rebuttal. Yes, thank you, Your Honor. Sorry about that. Going back to a statement that counsel for the commissioner had just made about the legislative history, you will note in the record in this case when the district court was attempting to decide which party had the correct position, the court made an interesting statement. It said that it reviewed the legislative history and it found it not helpful, which I found particularly interesting because, again, when I reviewed the legislative history on behalf of Mr. Larson, I found it to have enough information in there to support our position. I certainly would acknowledge that the commissioner can parse through portions of that record and find statements in there which appear to support hers. Maybe that's what the district court meant, but this is part of the problem with this legislative history approach in this particular case, relying strictly on the commissioner's view. Should this court conclude that the statute is ambiguous, I would just urge the court to take a very long and careful look at that legislative history as a part of its analysis and hopefully resolve that issue. But to go back to our principal position, and, again, I agree with the commissioner, the one thing we probably agree on is that the statute is unambiguous. We just have a different interpretation of it. As I've thought more about this, I'm reminded sort of of an analogy going back to something Yogi Berra once said when he said, if you see a fork in the road, take it. Well, in this particular case, what I'm concerned is they're looking for a fork in the road and then taking it and then creating a problem for themselves. Well, so how do you respond to her argument as a member of a uniformed service as defined in Section 410M? The way we respond to that is the danger in trying to take the statute apart piece by piece by piece. Well, it says as defined, so you have to. If you want to understand what member of a uniformed service is, then you have to look to 410. Correct. But if you go back to that, that supports our position because he's a member of a uniformed service. So she said he really wasn't a member of a uniformed service. Our reading of the statute is that he is. As a member of the Montana Air National Guard, a component of the United States Air Force, he's a member of a uniformed service. But he wasn't wearing that hat at his 9 to 5 civilian job. That's what her argument is. In a sense, that's true, except, as we pointed out, in this case the civilian aspects of his job were essentially military anyway. Because he was supporting a military mission. And I would readily concede if he's on a drill, then he's doing something no different than somebody who's just active-duty military. But even in his civilian work, he's essentially performing military-type services that were supporting the ultimate military mission. But I gather you agree that he's not subject to the military exception for his active-duty time or when he's actually at his drills. So that's not an issue. It's this 9 to 5 civilian component that's the issue, right? As we understand the commissioner's position, yes. We simply go back to the statute as a whole, reading as a whole, and then concluding in this particular case, individuals like Mr. Larson should receive the benefit of the exception. Okay. Do you have anything else you want to say? Is that it? That's it. Thank you. Okay. Thank you, counsel. We appreciate your arguments in this interesting case. The matter is submitted at this time, and that ends our session for today. Thank you all very much. All right. Before we close this session, standing order. Thank you.
judges: Gilman, Paez, Rawlinson